STEVEN G. KALAR
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: 415.436.7700
Facsimile: 415.436.7706
Jodi_Linker@fd.org

Counsel for Defendant HERNANDEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEY WONG HERNANDEZ,<br><br>Defendant. | Case No. CR 18-097 MMC<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: April 24, 2019<br>Time: 2:15 pm<br>Court: The Hon. Maxine M. Chesney |

## INTRODUCTION

Defendant Joey Hernandez stands before this Court to be sentenced on his convictions for one count of possession of child pornography and one count of production of child pornography. His possession of child pornography conduct is unremarkable relative to other child pornography cases. Mr. Hernandez has absolutely no criminal history and engaged in the same conduct that is seen in virtually every child pornography case. What makes this case unique is Mr. Hernandez's conviction for production of child pornography. Importantly, however, the pornography that Mr. Hernandez made was *never distributed* nor was there any intention for it to ever be shown to anyone. He filmed himself having sexual relations with girls; the girls had full knowledge that they were being recorded; and, he never showed the videos to any other person, made the videos available to anyone or otherwise posted

the videos. While this is still technically "production" of child pornography and deserving of a serious punishment, particularly in light of Mr. Hernandez's lies about his age, it is not such egregious conduct that warrants a sentence any greater than the 15 year mandatory minimum.

## ARGUMENT

### I. THE PSR WAS ISSUED IN VIOLATION OF RULE 32 AND INCORRECTLY CALCULATES THE GUIDELINES

On March 11, 2019, the Probation Officer disclosed the draft Presentence Report ("PSR") pursuant to Rule 32. Declaration of Jodi Linker in Support of Defendant's Sentencing Memorandum (hereinafter "Linker Decl."), ¶ 4. That report concluded that the correct total offense level was 37 and stated that the probation officer was "in agreement with the proposed guideline calculations as set forth in the Plea Agreement." *Id*. at Ex. C, ¶¶ 6 & 63. Both parties submitted a response to that draft report. *Id*. at Exs. D & E. As that offense level in the draft PSR was both accurate and consistent with the parties' plea agreement, *neither party* objected to the guideline calculation. *Id*. The final PSR was issued at 3:52 p.m. on Friday, April 12—two days after the April 10 deadline for the report—and for the first time indicated a different total offense level of 41. *Id*. at ¶ 7. Additionally, the probation officer included an addendum to the final report stating that all objections to the report had been resolved and *nowhere indicates* anything about this sudden change of course or the fact that the parties did not get the opportunity to review, consider or object to the final total offense level.

The parties were not notified of this change in the probation officer's position or given the opportunity to make timely objections pursuant to Rule 32. As the time for the disclosure and objections has passed, and no party objected to the draft report, the Court should strike the calculation in the final report and use the calculation in the draft report. Moreover, the calculation in the draft is consistent with the parties' plea agreement.

### II. A 15 YEAR SENTENCE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE GOALS OF SENTENCING

In sentencing Mr. Hernandez, the Court must consider *all* of the directives set forth in 18 U.S.C. section 3553(a), not just the Guidelines. *See United States v. Booker*, 543 U.S. 220 (2005). Section 3553(a) directs the sentencing court to impose a sentence sufficient, but not greater than necessary, to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the

offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and, provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the court to consider a number of additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and, the need to provide restitution to any victims of the offense, § 3553(a)(7).

Under *Booker*, the sentencing court must impose the lowest reasonable sentence that fulfils the goals of Congress, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. While the Court may apply a presumption of reasonableness to sentences within the applicable Guidelines range, the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *See Gall v. United States*, 558 U.S. 38, 49 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 551 U.S. at 358.

Here, a sentence of fifteen years in custody, the mandatory minimum, is more than sufficient to achieve all of the goals of sentencing. Mr. Hernandez has never had any contact with law enforcement prior to this offense. A sentence of fifteen years in custody is an exceptionally long period of incarceration and sends the appropriate message that this conduct will not be tolerated, serving both the general and specific deterrent goals of § 3553.

He is a relatively young man who, while faced with his own mortality after being diagnosed testicular cancer at the age of 23, began engaging in destructive—and criminal—conduct. He began downloading and looking at child pornography. He then would go on online sites to meet girls, but would lie about his age. He would generally state that he was 17 years old, regardless if he was 23 or 26 years old at the time. He would eventually tell them his true age. With the knowledge of the girls, he would record them engaging in sex with his phone. He never shared, posted, or otherwise showed the

videos or images he took to others. PSR ¶ 29. As expressed in his letter to the Court, he is extremely remorseful for his conduct. Linker Decl., Ex. A.[1]

Mr. Hernandez's upbringing lacked significant support and guidance. His parents often argued and eventually divorced when he was in 6th Grade. His mom was working to support Mr. Hernandez and his brother, so Mr. Hernandez was often at home left to fend for himself. He was disinterested in school and had nobody to try to keep him track so he dropped out in the 10th Grade. Since being in custody, he has been studying for the GED and hopes to also get his high school diploma. He is committed to using his lengthy prison sentence to better himself so that he can have greater employment opportunities once released.

Mr. Hernandez is, of course, in need of treatment. He has never received any counseling and will greatly benefit from the counseling that will be offered once he is on supervised release. But an unduly long prison term will not contribute to public safety and could be counterproductive. *See* https://www.sentencingproject.org/publications/long-term-sentences-time-reconsider-scale-punishment/. "Increasingly punitive sentences add little to the deterrent effect of the criminal justice system." *Id*. Studies now show that "deterrence is primarily a function of the *certainty* of punishment, not its *severity*." *Id*. (Emphasis in original).

Fifteen years of imprisonment is more than enough time in custody to punish Mr. Hernandez and deter any future wrongful behavior.

## III. THE SENTENCING GUIDELINES ARE EXCESSIVE AND NOT BASED ON EMPIRICAL EVIDENCE

The sentencing guidelines for each of Mr. Hernandez's offense alone would be 168-210 months.[2] Such a range is excessive and lacking in empirical support. Nonetheless, it is below the 15 year (180 month) mandatory minimum provided by Count 3. Accordingly, a sentence of 15 year more than sufficiently accounts for Mr. Hernandez's total conduct in this case.

Ordinarily, the Guidelines are entitled to deference because they are the product of years of careful

---

[1] Amongst the significant errors in Mr. Hernandez's Presentence Report is the probation officer's statement that Mr. Hernandez "has not provided a statement of acceptance of responsibility." He wrote a letter to the Court and submitted it to the probation officer on March 22, 2019. *Id*. at Ex. D.

[2] Each offense individually is offense level 35 after the three-level reduction for acceptance of responsibility.

*US v. Hernandez*, Case No. 18-097 MMC;
DEF.'S SENTENCING MEMO.                    4

study. When a particular guideline is *not* the result careful study or empirical analysis, by contrast, such deference is unfounded. *See Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007). In *Kimbrough*, a case involving the sentencing disparity between crack cocaine and powder cocaine offenses, the Supreme Court held that district courts have discretion to vary from a correctly calculated Guidelines range "based solely on policy considerations, including disagreements with the Guidelines." *Id.* at 101. In particular, the Court recognized that when guidelines are not the result of "empirical data and national experience, guided by a professional staff with appropriate expertise," they do not "exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 109. In such cases, sentencing courts may conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Id.* at 110.

The Ninth Circuit has reached the same conclusion regarding § 2G2.2. *See United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). Not only does the *Henderson* decision recognize that "district courts may vary from child pornography guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case," *id.* at 963, but it holds that a district court "commits procedural error when it fails to appreciate its *Kimbrough* discretion to vary from the child pornography Guidelines based on a categorical disagreement with them," *id.* at 964.[3]

The Guidelines for child pornography offenses have increased dramatically over the years, and in nearly every instance, these increases were mandated by Congress, often over the objection of the Sentencing Commission. *See Henderson*, 649 F.3d at 960-62. When possession of child pornography was criminalized in 1990, the Sentencing Commission created a new guideline for that offense, with a base offense level of 10 and a 2-level enhancement for material involving a prepubescent minor. *Id.* (citations omitted). Congress was not satisfied, however, and in 1991, "over the objection of the Commission," Congress directed the Commission to increase penalties for child pornography offenses.

---

[3] Other Circuits have reached similar conclusions. *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (holding that § 2G2.2 "can lead to unreasonable sentences that are inconsistent with what § 3553 requires"); *United States v. Grober,* 624 F.3d 592, 608-09 (3d Cir. 2010) (holding that because § 2G2.2 was not developed pursuant to the Commission's characteristic institutional role, district courts may vary from on policy grounds); *United States v. Stone,* 575 F.3d 83, 90 (1st Cir. 2009) (same).

US v. Hernandez, Case No. 18-097 MMC;
DEF.'S SENTENCING MEMO.                   5

*Id.* at 960. Among other changes, Congress "explicitly ordered the Commission" to increase the base offense levels to 15 (for receipt, transportation, and trafficking) and 13 (for possession). *Id.* at 960-61.

Congress demanded further increases in 1995, increasing the base offense level by 2 levels and adding a 2-level enhancement for use of a computer. *Id.* When the Commission submitted a report to Congress that was critical of the congressionally mandated two-level computer enhancement because "it failed to distinguish serious commercial distributors from more run-of-the-mill users," Congress "responded with legislation that directed the Commission to add enhancements for the use of a computer to persuade, induce, entice, coerce or facilitate the transport of a child; to increase penalties in any case in which the defendant engaged in a pattern of activity; and to clarify that distribution included distribution for nonpecuniary gain." *Id.* at 961 (citations omitted).

The two-level enhancement for use of a computer is meaningless. *See, e.g.*, *United States v. Carrie Myles*, 16-CR-409 HSG (N.D. Cal. 2017) (granting variance because "use of a computer" enhancement applies in every case and is not a useful indicator of criminal activity); *United States v. Christopher Lee Carignan*, 15-CR-003 VC (N.D. Cal. 2016) (varying from advisory range because of "problems" with the "use of a computer" enhancement and the enhancement for the number of images possessed). Even print adult pornography is a dying art form. Playboy magazine stopped publishing nude photographs in print this year because pornography is so readily available on the Internet. *See* Ravi Somaiya, *Nudes are Old News at Playboy*, NEW YORK TIMES, Oct. 12, 2015. Indeed, most adults view and/or download legal pornography over the Internet by using a computer, tablet or similar device, and this applies to the illegal consumption of child pornography as well. *Id*. ("Pornography magazines, even those as storied as Playboy, have lost their shock value, their commercial value, and their cultural relevance."); *see also R.V.*, 157 F. Supp. 3d 207, at 232-36 (explaining how the "Internet revolution enabled child pornography consumption").

With the enactment of the 2003 PROTECT Act, "Congress – for the first time and the only time to date – made direct amendments to the Guidelines." *Henderson*, 649 F.3d at 961 (citation omitted). These amendments included an enhancement for images of sadistic or masochistic conduct and a range of enhancements based upon the number of images. *Id.*

In sum, the child pornography Guidelines have been substantively revised nine times during their

nearly 28 years of existence. Most of the revisions were Congressionally-mandated and not the result of an empirical study. As the Commission itself has explained, "The frequent mandatory minimum legislation and specific directives to the Commission to amend the [G]uidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *Id.* (citation omitted).[4]

The result is that many of the individuals sentenced under § 2G2.2 face sentences that are excessive and unwarranted. The escalating Guideline ranges in child pornography cases have caused "widespread dissatisfaction" among district court judges. *United States v. Apodaca*, 641 F.3d 1077, 1083 (9th Cir. 2011) (citing U.S.S.C., *Results of Survey of United States District Judges January 2010 through March 2010* (2010) ("Judicial Survey"), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/surveys/20100608_Judge_Survey.pdf.)  For example, 71% of the federal judges surveyed in 2010 believed that the mandatory minimum sentence for receipt of child pornography was too high, and 69% believed that the guidelines for receipt offenses were too high. *See* Judicial Survey, *supra*. The judiciary's discomfort with the child pornography guidelines is reflected in the sentences imposed. In fiscal year 2017, more than seventy percent of the sentences imposed were below the advisory § 2G2.2 guideline range. *See* U.S.S.C, *2017 Sourcebook of Federal Sentencing Statistics* (2013) at Table 28, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table28.pdf.[5]

Section 2G2.2's overly harsh sentencing ranges also run afoul of the requirement that the sentencing court impose a sentence based on the individual characteristics of the offender. *See* 18 U.S.C. § 3553(a); *see also Henderson*, 649 F.3d at 965 (Berzon, J., concurring). As Judge Berzon notes, "an unduly deferential application of § 2G2.2 will lead to the vast majority of offenders being sentenced to near the statutory maximum term," a result which "stands in significant tension with a sentencing

---

[4] Not only were these revisions mandated without regard for the Commission's input, but many were "the result of arbitrary increases by Congress slipped into other bills, often with little or no debate." *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2008).

[5] Specifically, of the 1,403 total cases sentenced under § 2G2.2, only 35 were above the range, 376 were within the range, and the remaining 1,132 were below the range. *Id.*

US v. Hernandez, Case No. 18-097 MMC;
DEF.'S SENTENCING MEMO.                7

judge's duties 'to consider every convicted person as an individual.'" *Id.* (citation omitted).

As one district court judge has observed:

> [T]he enhancements for use of a computer and images containing children under age twelve are typical of this crime. Further, given the unfortunate ease of access to this type of material in the computer age, compiling a collection with hundreds of images is all too easy, yet carries a 5 level enhancement, which in this case nearly doubled the range. . . . The other large enhancement defendant received–4 levels for portrayal of sadistic conduct–applies whether or not the person specifically intended to possess such material, *see* U.S.S.G. § 2G2.2 cmt. n.2, which seems an odd way of measuring culpability.

*Hanson*, 561 F. Supp. 2d at 1009. Indeed, at least one specific offense characteristics applied in 99.9% of the cases sentenced under § 2G2.2 in fiscal year 2017. *See* U.S.S.C, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2017*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2017/Use_of_SOC_Offender_Based.pdf. According to the U.S. Sentencing Commission's fiscal year 2016 figures, the percentage of child pornography defendants who received the exact same enhancements that Mr. Hernandez receives are as follows:

| | |
|---|---|
| § 2G2.2(b)(2) victim under the age of 12 years (2 levels): | 95.2% of defendants |
| § 2G2.2(b)(4) sadistic/masochistic/violence/infant/toddler (4 levels): | 82.6% of defendants |
| § 2G2.2(b)(6) use of a computer (2 levels): | 95.8% of defendants |
| § 2G2.2(b)(7)(C) more than 600 images (5 levels): | 75.6% of defendants |

Because the enhancements apply in virtually every case, there is little room for the sentencing court to distinguish between more and less culpable offenders. Indeed they are not offense characteristics at all but considerations that are innate to the offense.

The production of child pornography guidelines are similarly without empirical support and are inflated to comport with the 15 year mandatory minimum sentence for such cases. Indeed, only 37% of defendants convicted of production of child pornography were sentenced within the guideline range, with only 2% getting above the range, and the remaining 61% getting a below guideline sentence. *See* U.S.S.C, *2017 Sourcebook of Federal Sentencing Statistics* at Table 28, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-

sourcebooks/2017/Table28.pdf.[6]

In summary, the Guidelines usually are considered a cornerstone of reasonableness, but only because it is assumed that each section was "the product of years of careful study." *United States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006). Where, as here, it has been established that the Guidelines were not a product of careful study or empirical analysis any presumption that the child pornography Guidelines are reasonable is especially unfounded. Accordingly, the range articulated under by the guidelines should be afforded significantly less weight by this Court than in the ordinary case. Mr. Hernandez requests that the Court vary downward to account for the guidelines lack of empirical and practical support.

## CONCLUSION

For the foregoing reasons, Mr. Hernandez respectfully requests that this Court sentence him to fifteen years of imprisonment to be followed by five years of supervised release.

Dated: _4/17/19_____

Respectfully submitted,

_____
JODI LINKER
Assistant Federal Public Defender

---

[6] Specifically, of the 462 total cases sentenced under § 2G2.1, only 9 were above the range, 170 were within the range, and the remaining 283 were below the range. *Id.*

US v. Hernandez, Case No. 18-097 MMC;
DEF.'S SENTENCING MEMO.                    9