DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6821
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-0097 MMC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORDANUM |
| v. | Date: April 24, 2019 |
| JOEY WONG HERNANDEZ, | Time: 2:15 p.m. |
| Defendant. | Hon. Maxine M. Chesney |

I.    **INTRODUCTION**

    Defendant Joey Wong Hernandez exploited numerous teenage girls that he met online, lured into sexual relationships, and filmed engaged in sexual conduct.  His pattern was fairly consistent: Hernandez met underage girls through social media, lied about his age, met his victims in person, began sexual relationships with the girls, and then filmed the girls as they had sex with him.  He took some girls to hotel rooms; he brought others to his house or had sex with them in his car.  When two of the girls asked Hernandez to delete the videos he took, Hernandez threatened the girls, claiming he would post the images online.

    Hernandez methodically catalogued his sexual exploitation.   He saved images and videos of each girl in separate electronic file folders —each folder titled with the girl's name and her age when

they met.

And his sexual interest in children did not end there.  Hernandez possessed almost one terabyte of child pornography on various electronic devices.   One hard drive alone contained over 5,700 images of child sexual abuse.  On at least three occasions, Hernandez shared videos containing child pornography with a group of approximately forty individuals through a social media application.

Taken together, Hernandez's continual and exploitative conduct requires a considerable custodial sentence.  This Court should sentence Hernandez to 210 months' imprisonment, followed by ten years of supervised release.

## II.    FACTUAL BACKGROUND

The government agrees with the factual recitation in the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office ("Probation") and encourages the Court to adopt it. Supplementing the facts in the PSR, the government below highlights the experiences of particular victims which illustrate the extent of Hernandez's exploitation.

### A.    Overview

Hernandez preyed upon young girls and taped them engaged in sexual conduct.  Through various online social media applications, Hernandez met underage girls, primarily 14-15 years old.  (PSR ¶¶ 25, 28.)  In several instances, he initially told the girls that he was also of high school age.  (PSR ¶ 28.) He'd ask the girls to send him sexually explicit photographs.  And then he'd meet the girls in person, engage in oral and vaginal sex, and tape it. (*See* PSR ¶ 28.) Hernandez stored the images and videos in curated file folders on his computer.  (PSR ¶¶ 26-27.)  He titled each folder with the girl's name and, in parentheses, the girl's age.  (*Id.*)  To date, law enforcement has identified nine underage victims.  (*Id.*)

### B.    Minor Two

In 2016, Hernandez met a 14-year-old girl, identified in the Indictment as Minor 2, through an online dating website, meetme.com.  (*See* Declaration of Sailaja M. Paidipaty ("Paidipaty Decl."), Ex. A, Reports of Investigation at JH-000051.[1])  He claimed he was 17 years old.  (*Id.*)  The two began

---

[1] The Declaration of Sailaja M. Paidipaty is being filed concurrently with the government's sentencing memorandum.  As part of the criminal investigation, a forensic interviewer with Homeland Security Investigations met with Hernandez's victims.  These interviews were video recorded and provided to the defense pursuant to a protective order.  Because the interviews total almost one dozen hours of video footage, the government is not submitting them for the Court's review prior to

chatting online regularly.  (*Id.*)  In February 2016, the two met in person for the first time at a park near Minor 2's home.  (*Id.*)  That same day, Hernandez took Minor 2 to a hotel where they engaged in both oral and vaginal sex.  (*Id.*)  Hernandez filmed their sexual activity, telling Minor 2 that he wanted to have it when he returned home.  (*Id.* at JH-000051-52.)

One week later, Hernandez took Minor 2 to a different hotel.  (*Id.*)  About one month later, they went to yet another hotel.  (*Id.*)  On all of these occasions, Hernandez had sex with Minor 2, and she still did not know that he had lied about his age.  (*See id.* at JH-000051-53.)  It was only later, once Minor 2 believed she was in a romantic relationship with Hernandez, that she learned the truth – that Hernandez was 28 years old, not 17.  (*Id.* at JH-000053.)  But by that point, Minor 2 was convinced that the two were in a legitimate relationship.  Recognizing his power over Minor 2, Hernandez asked the girl to send him sexually explicit photographs.  (*Id.* at JH-000055.)  On one occasion following a fight, Minor 2 told Hernandez that she would do anything for him.  (*Id.*)  He solicited more pornographic images of her. (*Id.*)  According to Minor 2, Hernandez directed her on what to send.  (*Id.*)  He asked for photos of her masturbating herself.  (*Id.*)  Hernandez reciprocated by sending Minor 2 videos of him masturbating. (*Id.*)

 Throughout this time, Hernandez knew Minor 2's age.  In fact, Hernandez took efforts to confirm her age.  Hernandez saved a photograph of Minor 2's high school identification card in the file folder on his computer labeled with Minor 2's name.  (*Id.* at JH-000054.)

Hernandez's exploitation of Minor 2 did not end after his arrest.  In November 2017, state law enforcement arrested Hernandez after finding him with another underage girl (Minor 1 in the Indictment).  (PSR ¶ 21.)  Even after his arrest, Hernandez continued soliciting Minor 2 for nude pictures.  (*Id.*)  Hernandez told Minor 2 he missed her and wanted pictures to masturbate to.  (*Id.*)

Tragically, Minor 2's involvement with Hernandez was not the first time a male took advantage

---

sentencing.  Instead, the government is providing the interview summaries drafted by the case agent (who observed the interviews in real time from a nearby room).  The summaries were previously produced to the defense, as well as Probation.  Should the Court want to review any of videotaped interviews, the government can provide those materials.

Additionally, the individual identified as Minor 2 in the Indictment is referenced as "Minor Victim 4" or "MV4" within the Reports of Investigation.

1  of her.  Minor 2's mother informed law enforcement that Minor 2 was molested previously and suffered

2  considerable trauma both from the molestation itself as well as the protracted legal battle that occurred

3  afterwards.  (*Id.* at JH-000060.)

4      **C.**    **Experiences of Other Victims**

5         The experiences of Hernandez's other minor victims are similar to those of Minor 2.  Hernandez

6  met all but one girl in person.  He had sex with the girls on multiple occasions and filmed those

7  encounters.  Below, the government provides a brief summary of Hernandez's predatory actions with

8  some of the girls (in-depth descriptions of all of the victim's experiences are recounted in the case

9  agent's reports):

10      &bull;   Minor Victim 2 ("MV 2")[2] – MV2 met online through a social media application.  (*Id.* at

11         JH-000140.)  Hernandez asked MV2 to send him pornographic photographs of herself.

12         (*Id.*)  MV2 did not want to send the photographs, but felt compelled to.  (*Id.* at JH-

13         000140-41.)  Afterwards, regretting the choice, MV2 asked Hernandez to delete the

14         images.  (*Id* at JH-000141.)  When MV2 threatened to tell someone about the images,

15         Hernandez said he would hurt her and post the pictures all over her school if she went to

16         the police.  (*Id.*)  Similar to Minor 2 of the Indictment, another man in MV2's life

17         sexually molested her as a child.  (*Id.*)

18      &bull;   Minor Victim 3 ("MV3") – When she was 15 years old, MV3 met Hernandez through a

19         social media application.  (*Id.* at JH-000147.)  Hernandez told her he was 17 or 18 years

20         old.  (*Id.*)  Hernandez asked MV3 to send him nude pictures.  On one occasion,

21         Hernandez picked MV3 up from a friend's party.  (*Id.* at JH-000146.)  Hernandez asked

22         MV3 to have sex in his car.  (*Id.*)  Though MV3 is trying to forget the details of the

23         experience, she believes he may have been filming them because he kept moving his

24         phone around.  (*Id.*)  When she asked, Hernandez lied, claiming he was just using the

25         flashlight feature on his phone.  (*Id.*)

26

27     [2] The case agent's reports reference Minor Victim 2 or MV2.  This was the second victim identified in the course of the criminal investigation.  MV2 <u>is not</u> Minor 2 as identified in the

28  Indictment.  As referenced above, *see supra* n.1, Minor 2 in the Indictment is identified as Minor Victim 4 or MV4 within the investigative reports.

- Minor Victim 5 (MV5) – MV5 met Hernandez through meetme.com. (*Id.* at JH-000151.) As with the other girls, Hernandez claimed to be 17 years old. (*Id.*) The two met on three occasions and engaged in oral sex, often in the backseat of Hernandez's car. (*Id.*) On at least one occasion, Hernandez filmed this. (*Id.*) The last time the two met in person, Hernandez pressured MV5 to have vaginal sex. (*Id.* at JH-000152.) MV5 resisted, and Hernandez ended the encounter. (*Id.*) Afterwards, when MV5 told Hernandez that she was upset by what happened, Hernandez threatened the girl, claiming he would "mess up her life" if she did not leave him alone. (*Id.*)

- Minor Victim 6 ("MV6") – MV6 met Hernandez through an online website. (*Id.* at JH-000156.) The first time the two met in person, Hernandez took MV6 to a hotel to engage in oral sex. (*Id.* at JH-000157.)   On other occasions, Hernandez brought MV6 to his home. (*Id.* at JH-000158.) MV6 was initially unaware that Hernandez taped them having sex. (*Id.* at JH-000157.) Hernandez told her that he wanted the recordings to watch later. (*Id.* at JH-000158.) He told MV6 that he had filmed other "ex-girlfriends" and that he kept the recordings in case anyone "messed with him." (*Id.*) When MV6 asked if he would ever use the recordings against her, he threatened, "If it ever came to it." (*Id.*) Hernandez manipulated MV6 by giving her money for things such as prom dress in exchange for sex. (*Id.* at JH-000162.) On a few occasions, MV6's sister asked to borrow money from Hernandez. On these occasions, Hernandez demanded oral sex from MV6, saying she "owed him" (*Id.*)

## D.     Possession and Distribution of Child Pornography

In addition to Hernandez's contact offenses, he possessed and distributed child pornography. Law enforcement initially identified Hernandez through an international investigation into individuals sharing child pornography through social media applications. (PSR ¶¶ 6-10.) On at least three occasions, Hernandez sent several videos of child pornography to a group of approximately 40 people through the application. (*Id.*) These videos involved children as young as three to five years' old. (PSR ¶ 10.)

Hernandez admitted having a sizeable cache of child pornography on his electronic devices.

1  (PSR ¶ 15.)  On one device alone, forensic examiners identified over 5,700 images of child

2  pornography.  (*Id.*)  Hernandez's collection includes particularly graphic videos of child abuse involving

3  toddlers and bestiality.  (*Id.*)

4  **III.    SENTENCING GUIDELINES CALCULATION**

5           The Plea Agreement in this case outlines the Sentencing Guidelines calculation contemplated by

6  the parties.  (Dkt. 23, Plea Agreement ¶ 7.)  Probation agreed with those calculations at the time it issued

7  the preliminary PSR.  Subsequently, Probation disagreed with the parties' calculation in the final PSR.

8  Probation's view of the Guidelines differs in two fundamental ways.  First, Probation does not include a

9  five-level enhancement for conduct constituting a "pattern of activity involving the sexual abuse or

10 exploitation of a minor" (U.S.S.G. § 2G2.2(4)(B)) in its calculation of the appropriate offense level for

11 Possession of Child Pornography (Count 7).  Second, it instead added a Chapter Four enhancement for

12 conduct constituting a "pattern of activity involving prohibited sexual conduct" (U.S.S.G.

13 § 4B1.5(b)(1)), which increases the overall offense level after considering the grouping analysis.  The

14 effect of these two changes results in an Adjusted Offense Level of 41 (as opposed to 37, as set forth in

15 the plea agreement).

16          Following the issuance of the final PSR, counsel for Hernandez noted that change violates Rule

17 32 of the Federal Rules of Criminal Procedure, which requires notice to parties of Probation's

18 Guidelines calculation and provides parties with an opportunity to submit objections.  The government

19 proposed continuing sentencing to allow Hernandez the ability to make a formal objection to Probation's

20 calculations.  It appears that Hernandez anticipates going forward with sentencing as scheduled next

21 week.  The government takes no position on the final calculation.  The government's sentencing

22 recommendation honors its obligations under the plea agreement, which requires the government to

23 recommend the low-end of the Guidelines *as calculated in the Plea Agreement*.  (Dkt. 23, Plea

24 Agreement ¶ 23.)

25 **IV.    SENTENCING RECOMMENDATION**

26          The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

27 purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520

28 F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under

1  the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'"

2  *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S.

3  85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process."

4  *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines

5  calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the

6  factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations

7  are the nature and circumstances of the offense and the need to protect the public from further crimes.

8  18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (C).

9       The seriousness of the conduct here speaks for itself.  Hernandez preyed on young, vulnerable

10  girls.  His actions were deliberate and tactical.  He lied about his age, knowing that the girls may not

11  communicate with him if he revealed his true age initially.  He groomed them by speaking with them

12  online and gaining their trust.  And then he met them in person where, often on the very first meeting, he

13  had sex with the girls and filmed it.

14       As Hernandez himself told the girls, he filmed their sexual encounters for two reasons: one, to be

15  able to re-watch them later for his own sexual gratification, and two, as an insurance policy should the

16  girls ever consider reporting him to the police.  With respect to the first reason, as Congress and courts

17  have noted, each time a perpetrator watches a video of child pornography, they re-victimize the child

18  used to make the video.  Even if Hernandez did not distribute the videos he took, he recorded them so he

19  could repeatedly watch them himself.  With respect to his second reason, Hernandez contemplated

20  potentially distributing the videos as retaliation if necessary.  When a minor implored him to delete the

21  images he had of her, Hernandez refused, hanging those images over the girl's head.  (Paidipaty Decl.,

22  Ex. A, Reports of Investigation at JH-000140-41.)  He admitted keeping videos of "ex-girlfriends" in

23  case anyone messed with him.  (*Id.* at JH-000158.)  Social media and the threat of online shaming

24  empowers perpetrators like Hernandez at the expense of vulnerable girls.

25       As demonstrated by his need for "protection" from exposure, Hernandez knew his actions were

26  not just wrong, but criminal.  He took great efforts to conceal his illicit "relationships" by taking the

27  girls to hotel rooms or having sex with them in the back of his car.  He refused to meet one of the

28  minor's friends in fear of being outed and of facing legal consequences.  (*Id.* at JH-000056.)

Hernandez's methodically catalogued file folder system exemplifies his deliberate conduct. Strikingly, the contents of the folders demonstrate not only that Hernandez knew the girls were underage, but that he sought to confirm their underage status. The folders contained documents ranging from images of a minor's birth certificate to images of a minor's high school identification card. (*See id.* at JH-000050.) His obsession with the girls' ages shows that he specifically pursued a certain teenage subset.

Notably, Hernandez targeted teen girls who were particularly vulnerable to the overtures of a man who gave them attention. At least two of the victims suffered a prior instance of child molestation in their past. Another victim asked Hernandez for money, which he gave her in exchange for sex. These victims require the Court to hold Hernandez accountable for his actions.

Beyond Hernandez's criminal sexual conduct with the nine minor victims, he possessed thousands of images and videos of child pornography, and distributed some of these images. His disregard for the welfare of children is clear.

Taken together, Hernandez's actions warrant a substantial custodial sentence. Based on his admission to producing child pornography, Hernandez faces a high mandatory minimum sentence of 180 months. A sentence at the mandatory minimum should be reserved for the least culpable defendant. In light of the numerous girls that he victimized, the videos that he made, the threats that he issued, and the child pornography that he possessed and distributed, Hernandez is far from the least culpable defendant. His conduct warrants a sentence of 210 months' imprisonment.

**V.    CONCLUSION**

The government respectfully asks this Court to impose a sentence of 210 months' incarceration, followed by ten years of supervised release pursuant to the conditions outlined in the PSR, and a mandatory $200 special assessment.

DATED: April 18, 2019                                       Respectfully submitted,

                                                                                DAVID L. ANDERSON
                                                                                United States Attorney


                                                                                _____/s_____
                                                                                SAILAJA M. PAIDIPATY
                                                                                Assistant United States Attorney